UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------X
Bravado International Group
Merchandising Services, Inc. and              08-CV-3123
Bravado Internation Group, Limited            (CPS)(CLP)

                    Plaintiffs,

          -against-

Ninna, Inc., Heyclick, Inc., Hollywood        MEMORANDUM OPINION
Merchandise Corp., Cmegamall.com,             AND ORDER
Rocktshirtspunk.com, Mosh-Pitt.com, Jacob
Michailov a/k/a Yaakov Michailov a/k/a Yakov
Michailov, Peter Michailov a/k/a Pinhas
Michailow, I Schwartz, Inc., and David
Michailow,

                    Defendants.
-------------------------------------------X

SIFTON, Senior Judge.

       Bravado International Group Merchandising Services, Inc. and

Bravado International Group, Limited (collectively "plaintiffs"

or "Bravado") bring this action against Ninna, Inc., Heyclick,

Inc., Hollywood Merchandise Corp., cmegamall.com,

rocktshirtspunk.com, mosh-pitt.com, Jacob Michailov a/k/a Yaakov

Michailov a/k/a Yakov Michailov, Peter Michailow a/k/a Pinhas

Michailow, I Schwartz, Inc., and David Michailow (collectively

"defendants").  The Complaint alleges defendants engaged in (1)

false designation of origin, in violation of 15 U.S.C. § 1125(a);

(2) the unauthorized use of the names and likenesses of certain

musical performers, in violation of Cal. Civ. Code § 3344; (3)

common law unfair competition; (4) violation of common law right

of publicity; (5) trademark infringement, in violation of 15

U.S.C. § 1114, with respect to the Korn, Iron Maiden, Guns N

Roses, and Depeche Mode marks (counts 4, 6, 7, and 8)[1]; (6)

common law fraudulent conveyance; and (7) unlawful deceptive acts

and practices, in violation of New York Gen. Bus. Law § 349. The

Complaint also asserts a claim that the corporate defendants are

the alter egos of the individual defendants.

Plaintiffs moved, *ex parte*, for an order permitting them to

seize merchandise from defendants bearing the trademark, name,

logo, and/or likeness of various musical groups and performers,

equipment used in the manufacture of these products, and relevant

books and records. Plaintiffs also sought, *ex parte*, a temporary

restraining order to prevent defendants from using the names,

likenesses, and/or trademarks of certain musical groups and

performers.

On August 1, 2008, Judge Vitaliano granted plaintiffs'

motion for the *ex-parte* seizure order for 32 33rd Street, 4th

Floor, Brooklyn, New York ("33rd Street Location"), and, in part,

plaintiffs' motion for a temporary restraining order.[2] The

seizure was conducted on August 5, 2008. The United States

Marshal seized 41 silk screens and 246 garments bearing the

names, trademarks, and/or likenesses of various musical groups

---

[1] Plaintiffs' Complaint is misnumbered and contains two Sixth Causes of Action.

[2] Judge Vitaliano declined to restrain defendants' assets.

and performers listed in the seizure order.  Miscellaneous business records were also seized, copied, and returned to defendants.

On August 13, 2008, defendant Jacob Michailov and counsel for plaintiffs appeared before Judge Irrizary.  At this proceeding, the August 5, 2008, seizure was confirmed.  August 13 Transcript at 4-5.  Judge Irizarry reduced defendant's bond from $50,000 to $5,000, extended the temporary restraining order until August 21, 2008, and unsealed the docket.  *Id.* At 7-9.

On August 18, 2008, and again on September 5, 2008, plaintiffs requested an adjournment of the hearing on their motion for a preliminary injunction in order to allow the parties more time to discuss the possibility of defendants' consenting to the entry of the injunction.  Defendants consented to both requests for adjournment and agreed to the extension of the temporary restraining order until the rescheduled hearing date. Both requests for adjournment were granted.  On September 25, 2008, plaintiffs requested and defendants consented to an additional one-week adjournment of the hearing and extension of the temporary restraining order.  The request was granted.

On October 2, 2008, this Court held oral argument on plaintiffs' motion for a preliminary injunction.  Only counsel for plaintiffs appeared at the hearing, at which I reserved decision on the matter.  Approximately half an hour later,

however, three of the individual defendants appeared before the Court and indicated that they wished to submit certain documents in their defense. I directed the defendants to file any submissions on their behalf by October 6, 2008. No such documents were filed.

Now before this Court is plaintiffs' motion for a preliminary injunction against the defendants. Upon the findings of fact and conclusions of law set forth below, this motion is granted.

## Background

The following undisputed findings of fact are derived from plaintiffs' Complaint, filings and affidavits submitted in connection with this action, and from hearings and oral arguments held before the Judge Irizarry on August 13, 2008, and the undersigned on October 2, 2008. Defendants have not made any submissions in connection with this matter.

Plaintiffs maintain the exclusive license to sell all merchandise to the retail level of trade throughout the United States containing the names, trademarks, logos, or likenesses of musical performers known as Morrissey, Metallica, Slayer, Korn, Guns N Roses, Led Zeppelin, The Clash, Iron Maiden, Motorhead and Depeche Mode ("Musical Groups and Performers"). Declaration of Peter D'Auria ("D'Auria Decl.") ¶ 1. Such merchandise consists of articles of clothing, jewelry, posters, buttons, calendars,

poster books and similar merchandise featuring the names,
trademarks, or likenesses of the Musical Groups and Performers.
*Id.* ¶ 3.  The Musical Group and Performers are all nationally
renowned and each one has established a secondary meaning in the
minds the public with respect to their trademarks and likenesses.
*Id.* ¶ 7.

There exists an illicit industry manufacturing, importing,
distributing and selling unauthorized, or "bootleg," versions of
products of the type plaintiffs are licensed to sell.  *Id.* ¶ 4.
On March 29, 2004, plaintiffs commenced an action in the United
States District Court for the Central District of California
against several parties who were selling merchandise bearing the
names, trademarks, or likenesses of musical performers, including
The Cure, The Who, Sex Pistols, Morrissey, The Clash, and Guns N
Roses, for whom plaintiffs were the exclusive licensees (the
"California Action").  Declaration of Kenneth A. Feinswog dated
July 30, 2008 ("Feinswog Decl.") ¶ 2.  During the California
Action, plaintiffs learned that certain of the named defendants
were receiving infringing merchandise from I Schwartz, Inc.,[3]
Peter Michailow a/k/a Pinhas Michailow, and David Michailow.  *Id.*
Plaintiffs accordingly filed an amended complaint naming these
additional defendants on June 16, 2004.  *Id.*  On August 11, 2005,
a judgment was entered in the California Action against I

_____

[3]  I Schwartz, Inc. is located at the 33rd Street Location.

Schwartz, Peter Michailow, and David Michailow in the amount of
$255,186.57 along with a permanent injunction enjoining them from
selling merchandise bearing the names, trademarks, and/or
likenesses of the musical groups or performers in the California
Action. *Id.* ¶ 3; *see also id.* Ex. B (copy of judgment). This
judgment was filed in the United States District Court for the
Southern District of New York on October 27, 2005.[4] *Id.*

In a continued effort to halt the manufacture and sale of
bootleg merchandise, plaintiffs began investigating
cmegamall.com. On July 2, 2008, a private investigator, Teresa
Murphy, purchased an Axl Rose shirt, an Iron Maiden shirt, and a
Jimmy Page shirt from the website. Declaration of Teresa Murphy
("Murphy Decl.") ¶ 3. On July 10, 2008, she received a package
containing these shirts. *Id.* ¶ 4. The return address on the
package, the 33rd Street Location, was for defendant Ninna, Inc.
*Id.* Peter D'Auria, Chief Financial Officer of Bravado, examined
these shirts and, based on his familiarity with the shirts
authorized for sale, concluded that each was unauthorized.
D'Auria Decl. ¶¶ 8-9. Mr. D'Auria also reviewed printouts from

---

[4] Following inclusion of the I Schwartz defendants in the California
Action, plaintiffs learned that defendant David Michailow transferred a
condominium that he owned to defendant Yaakov Michailov for no compensation.
Feinswog Decl. ¶ 4. Defendant Yaakov Michailov, in turn, sold the condominium
to a Borjana Mihajlovic-Cekic for $235,000. *Id.* ¶ 5. These proceeds were
apparently used to satisfy defendant David Michailow's mortgage on the
property, and plaintiffs contend that the transfer was made to prevent
plaintiffs from collecting on the judgment that was eventually entered in the
California Action. *Id.* ¶ 6

cmegamall.com and rocktshirtspunk.com and confirmed that all the
shirts of the Musical Groups and Performers advertised thereon
are unauthorized. *Id.* ¶ 10.

Defendant Heyclick owns the Ninna website, bubblewrap-
nyc.com. Feinswog Decl. ¶ 9; *see also id.* Ex. I (copy of
printout from Better-Whois.com showing that bubblewrap-nyc.com is
owned by defendant Heyclick). A Pete M. is the administrative
contact for bubblewrap-nyc.com. *Id.* ¶ 9. Heyclick and Ninna
have the same address, the 33rd Street Location, and phone and
fax numbers as I Schwartz. *Id.* On two occasions, on June 17,
2008 and July 17, 2008, another investigator, Michael Falsone,
went to the 33rd Street location, met with someone named Peter,
and bought some bubble wrap. Declaration of Michael Falsone
("Falsone Decl.") ¶¶ 1, 4. Falsone observed silkscreen machines
that were being used to manufacture music related t-shirts. *Id.*
¶ 4.

Defendant Yaakov Michailov is the registrant for defendant
mosh-pitt.com. Feinswog Decl. ¶ 12; *see id.* Ex. J (printout from
Better-Whois.com website showing ownership of mosh-pitt.com by
Yaakov Michailov). Defendant Yaakov Michailov is also designated
to receive process for defendant Hollywood Merchandise Corp. *Id.*
¶ 14; *see also id.* Ex. L (printout from New York State Department
of State Division of Corporations showing that Hollywood
Merchandise Corp.'s agent for service of process is defendant

Yaakov Michailov). Defendants Jacob Michailov, Peter Michailow, and David Michailow are, according to Jacob Michailov, brothers. *See* Aug. 13, 2008 Tr. at 7-8. At the hearing before Judge Irizarry, Jacob Michailov also confirmed that he owned or had an interest in defendant Ninna, Inc. *See id*. at 4.

On August 5, 2008, the United States Marshals, pursuant to the Seizure Order, effected a seizure at the 33rd Street Location. Declaration of Kenneth A. Feinswog dated August 11, 2008 ("Feinswog Aug. 11 Decl.") ¶ 2. The Marshals seized 41 silk screens and 246 garments bearing the names, trademarks, and/or likenesses of the Musical Groups or Performers. *Id.* Miscellaneous business records were also seized from defendants, copied, and returned. *Id.*

## Discussion

Pursuant to Federal Rule of Civil Procedure 65(a), a preliminary injunction is appropriate if the movant shows (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief. *Gold v. Feinberg*, 101 F.3d 796, 800 (2d Cir. 1996). "In a trademark infringement or false designation case, 'proof of a likelihood of confusion establishes both a likelihood of success on the merits and irreparable harm.'" *Strange Music,*

*Inc. v. Strange Music, Inc.*, 326 F. Supp.2d 481, 486 (S.D.N.Y. 2004) (quoting *Brennan's, Inc. v. Brennan's Restaurant, LLC.*, 360 F.3d 125, 129 (2d Cir. 2004)); *Katz v. Modiri*, 283 F.Supp.2d 883, 891 (S.D.N.Y. 2003).

Plaintiffs' claims[5] of trademark infringement are brought under the federal trademark laws, 15 U.S.C. §§ 1114[6] (imitation of registered mark) and 1125(a) (false designation of origin). Section 1125(a)(1) protects unregistered marks against infringement. *Genesee Brewing Co., Inc. v. Stroh Brewing Co.*, 124 F.3d 137, 142 (2d Cir. 1997).

"To prevail on a claim of trademark infringement, a plaintiff must show, first, that its mark merits protection, and, second, that the defendant's use of a similar mark is likely to cause consumer confusion." *Brennan's, Inc. v. Brennan's Restaurant, L.L.C.*, 360 F.3d 125, 129-30 (2d Cir. 2004) (citing *Gruner + Jahr USA Publ'g v. Meredith Corp.*, 991 F.2d 1072, 1075 (2d Cir. 1993)). This test applies to infringement claims brought under both §§ 1114 and 1125(a). *Virgin Enterprises Ltd.*

---

[5] 15 U.S.C. § 1125(a) permits "any person who believes that he or she is likely to be damaged" to bring a civil action. Accordingly, courts have permitted licensees to sue to enforce a mark under this section. *See, e.g., Quabaug Rubber Co. v. Fabiano Shoe Co., Inc.*, 567 F.2d 154, 160 (1st Cir.1977) (holding that licensee was not a registrant, exclusive licensee, or assignee of trademark, but still had standing to assert false designation claim under 15 U.S.C. § 1125(a)); *see also Coyne's & Co., Inc. v. Enesco, LLC*, --- F.Supp.2d ----, 2008 WL 2515706, at *12 (D.Minn. Jun. 21, 2008) (Section 1125(a) "confers standing on trademark licensees").

[6] The marks of Depeche Mode, Guns N Roses, Iron Maiden, and Korn are registered.

*v. Nawab*, 335 F.3d 141, 146 (2d Cir. 2003).

Numerous courts have held that the trademarks, names, and likenesses of musical groups and performers, whether registered marks or not, are protected under § 1125(a). *See, e.g.*, *Gore v. Various John Does*, 1998 WL 778374 (S.D.N.Y. Nov. 6, 1998); *ASA Music Productions v. Thomsun Electronics,* 49 U.S.P.Q.2d 1545, 1555 (S.D.N.Y. 1998); *Winterland Concessions Co. v. Fenton*, 835 F. Supp. 529 (N.D.Cal. 1993); *Nice Man Merchandising, Inc. v. Logocroft, Ltd.*, 23 U.S.P.Q.2d 1290 (E.D.Pa. 1992); *Brockum Co., a Div. of Krimson Corp. v. Blaylock*, 729 F. Supp. 438 (E.D.Pa. 1990); *Joel v. Various John Does*, 499 F. Supp. 791 (E.D.Wis. 1980).

To evaluate the likelihood of consumer confusion, courts apply the factors set forth in *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961). However, "the Court need not undertake a factor-by-factor analysis under [*Polaroid* to determine likelihood of confusion] because counterfeits, by their very nature, cause confusion." *Gucci America, Inc. v. Duty Free Apparel, Ltd.*, 286 F. Supp.2d 284, 287 (S.D.N.Y. 2003). Moreover, there is little question that defendants' merchandise will cause confusion or deception as to its origins because defendants are using actual trademarks and/or likenesses of the Musical Groups and Performers and misrepresent on cmegamall.com that they are selling licensed merchandise. *See Gore,* 1998 WL

778374, at *1-2 (unauthorized sale of products bearing trademarks, names, or likenesses of Depeche Mode likely to cause confusion or deception as to origin of merchandise); *see also Nice Man Merchandising*, 23 U.S.P.Q.2d at *5 (finding confusion established when defendant sold merchandise bearing names, trademarks, logos, or likenesses of performers licensed to plaintiff).

For the reasons set forth above, plaintiffs have demonstrated likelihood of success on the merits and irreparable harm on their § 1125(a) claims and, since the test is the same, their § 1114 claims with respect to the registered marks.[7] Accordingly, plaintiffs' motion for a preliminary injunction against defendants, with the exception of defendant David Michailow, is granted.[8]  However, should defendants at a future time submit evidence sufficient to show that plaintiffs are not entitled to a preliminary injunction, this order may be vacated.

---

[7] Since a preliminary injunction is appropriate under § 1125(a) (as well as § 1114 with respect to the registered marks), I need not analyze plaintiffs' other claims at this time.

[8] At the October 2, 2008 oral argument, counsel for plaintiffs stated that defendant David Michailow has not been served in connection with this matter and conceded that plaintiffs are not seeking a preliminary injunction against that defendant.  While, at this stage, it is not yet certain that plaintiffs would be able to prove that each of the remaining defendants is connected to the scheme, the evidence presented is sufficient to demonstrate a connection between each of these defendants and the broader scheme.  Moreover, as set forth in the accompanying order, the preliminary injunction causes no substantial harm to any legitimate business engaged in by defendants who may ultimately be found to be unrelated to the scheme.

## Conclusion

For the reasons set forth above, and as set forth in the accompanying order, plaintiffs' motion is granted. The clerk is directed to transmit a filed copy of the within to all parties and the magistrate judge.

SO ORDERED.

Dated :   Brooklyn, New York
          October 6, 2008

                    By: /s/ Charles P. Sifton (electronically signed)
                        United States District Judge