UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
BRAVADO INTERNATIONAL GROUP
MERCHANDISING SERVICES, INC., et al.,

                Plaintiffs,

      - against -

NINNA, INC., et al.,

           Defendants.
--------------------------------------------------------X

**REPORT AND**
**RECOMMENDATION**

08 CV 3123 (CPS)

On July 31, 2008, plaintiffs Bravado International Group Merchandising Services, Inc.

and Bravado International Group Limited (collectively, "Bravado" or "plaintiffs") commenced

this action against defendants Ninna, Inc. ("Ninna"), Heyclick, Inc. ("Heyclick"), Hollywood

Merchandise Corp. ("Hollywood"), I Schwartz Inc. ("I Schwartz"), Cmegamall.com,

Rocktshirtspunk.com, Mosh-pitt.com, Jacob Michailov, also known as Yaakov Michailov, also

known as Yakov Michailov, Peter Michailow, also known as Pinhas Michailow, and David

Michailow, seeking a temporary restraining order and preliminary injunction prohibiting

defendants from selling unauthorized merchandise bearing the names of certain musical groups

and performers. On August 1, 2008, the court issued a temporary restraining order and an order

of seizure directing the seizure and impoundment of unauthorized merchandise in the defendants'

possession. (Feinswog 8/18 Decl.;[1] Prelim. Inj. Op.[2] at 2). Following the seizure, which was

---

[1]Citations to "Feinswog 8/18 Decl." refer to the Declaration of Kenneth A. Feinswog,
Esq., submitted August 18, 2008.

[2]Citations to "Prelim. Inj. Op." refer to the Memorandum Opinion and Order granting
plaintiffs' request for a preliminary injunction, issued by the district court on October 6, 2008.

conducted on August 5, 2008, the court issued an order dated October 6, 2008, entering a preliminary injunction. (Prelim. Inj. Op.).

On November 20, 2008, plaintiffs requested that defaults enter against all defendants except Peter and David Michailow. On December 4 and 5, 2008, based on their failure to answer or otherwise respond to the Complaint, the Clerk of Court entered defaults against each of the named defendants with the exception of Peter and David Michailow and I Schwartz. With respect to I Schwartz and David Michailow, plaintiffs have not submitted any evidence that either of these defendants have been served with the Complaint, although David Michailow did make a *pro se* appearance before this Court on March 18, 2009; defaults, therefore, have not entered against either. On October 8, 2008, Peter Michailow submitted a document that was docketed as an answer, but which plaintiffs contend was actually a response submitted on behalf of defendant Ninna to the motion for preliminary injunction. Plaintiffs now move for entry of a default judgment against Peter Michailow and against the remaining defendants against whom defaults were previously entered.[3]

This Court respectfully sets forth the following recommendations.

FACTUAL BACKGROUND

Plaintiff Bravado International Group Merchandising Services, Inc. ("Bravado Inc.") is a California corporation with a place of business in New York, engaged in the business of

---

[3]The defendants against whom defaults have entered — i.e., all defendants except I Schwartz, Peter Michailow, and David Michailow — will be referred to hereinafter as the "defaulting defendants." The defaulting defendants and Peter Michailow will be referred to simply as "defendants." Plaintiffs do not seek a default judgment against I Schwartz or David Michailow, and accordingly, they are not the subject of this Report and Recommendation.

2

marketing and selling merchandise bearing the names, trade names, trademarks and logos of various musical groups and performers throughout the United States. (Compl.[4] ¶¶ 1, 8). The various musical groups and performers include Korn, Guns N' Roses, The Clash, Iron Maiden, Cradle of Filth, Depeche Mode, Led Zeppelin, Motorhead, and Morrissey, all of whom have entered into licensing agreements with Bravado International Group, Limited ("Bravado Ltd"), a corporation duly organized in the United Kingdom. (Id. ¶¶ 2, 8, 11).[5]

Plaintiffs allege that the defendants are unlicensed distributors who sold or attempted to sell and distribute shirts and other items bearing the names, trade names, designs, logos or likenesses of some of these musical groups and performers for which Bravado Inc. holds the exclusive license (the "Bootleg Merchandise"). (Id. ¶ 9). According to the Complaint, defendants Ninna, Heyclick, Hollywood, and I Schwartz are corporations that have transacted business in the Eastern District of New York and have engaged in the business of distributing the Bootleg Merchandise. (Id. ¶ 4). Specifically, plaintiffs allege that defendants Peter Michailow and David Michailov operate I Schwartz, located at 32 33rd Street in Brooklyn. (Feinswog 7/31 Decl.[6] ¶ 7). This same address is where Ninna and Heyclick operate their business and is listed as the return address for the shipment of infringing goods by Ninna, using the email address Cmegamall.com. (Id. ¶ 7). Information obtained from company catalogs, the website Better-

---

[4]Citations to "Compl." refer to plaintiffs' Complaint filed July 31, 2008.

[5]Bravado Ltd. granted Bravado Inc. the exclusive rights to manufacture and sell merchandise bearing the likenesses, names, marks and logos of the various groups and performers in the United States. (Id. ¶ 8).

[6]Citations to "Feinswog 7/31 Decl." refer to the Declaration of Kenneth A. Feinswog, Esq., dated July 30, 2008 and submitted July 31, 2008 in support of plaintiffs' motion for a temporary restraining order, a seizure order, and preliminary injunction.

Whois.com, and the New York Department of State demonstrate that I Schwartz, Ninna and Heyclick use the same facsimile number, that the telephone numbers associated with Ninna are registered to Pinhas Michailow and Yaakov Michailov,[7] and the administrative contact for Heyclick is "Pete M.," which plaintiffs believe is Peter Michailow.[8] (Id. ¶¶ 8, 9, 10, 11). Yaakov Michailov is listed as the owner of the Mosh-pitt.com website and as Hollywood's agent for service of process. (Id. ¶¶ 12, 14). Hollywood's website – Rocktshirtspunk.com – advertises and sells infringing items, as does the Cmegamall.com website, which falsely represents that all the merchandise they sell is licensed. (Id. ¶¶ 15, 16, 19).

In March 2004, plaintiffs commenced an action in federal district court for the Central District of California (the "California action") against several parties who were selling counterfeit merchandise. (Id. ¶ 2); Bravado Int'l Group Merch. Servs. v. Nettillect Inc., No. 2:04 CV 2116 (C.D. Cal. filed Mar. 29, 2004). Based on information developed during the course of that case, plaintiffs learned that I Schwartz, Peter Michailow and David Michailow were the suppliers of certain of the infringing items; accordingly, they were thereafter added as defendants to the California action. (Feinswog 7/31 Decl. ¶ 2). On August 11, 2005, the court in the

---

[7]In support of their allegation that two phone numbers used by Ninna are registered to Pinhas Michailow and Yaakov Michailov, plaintiffs cite the Declaration of Michael Falsone, submitted on July 31, 2008 ("Falsone Decl."). The text of this declaration lists one of the numbers as 347-831-8662, while the website printout attached to the declaration as Exhibit A lists the number as 347-831-8626. However, the Feinswog Declaration submitted at the same time references the number listed on the website, suggesting that this discrepancy between the Falsone Declaration and the website is merely a typographical error. (See Feinswog 7/31 Decl. ¶ 10).

[8]In the caption of their Complaint, plaintiffs allege that "Yaakov Michailov" is an alias of defendant Jacob Michailov and "Pinhas Michailow" is an alias of defendant Peter Michailow. They provide no explanation in their Complaint or supporting papers of the basis for this allegation.

California action entered a judgment against I Schwartz and Peter and David Michailow in the amount of $255,186.57. (Id. ¶ 3, Ex. B). The court also issued a permanent injunction enjoining them from selling merchandise bearing the names, trademarks and likenesses of Morrissey, The Clash, and Guns N' Roses. (Id.) The judgment was filed in the U.S. District Court for the Southern District of New York on October 27, 2005. (Id.)

According to plaintiffs, shortly after being added as a defendant in the California action, David Michailow transferred his condominium located on East 2nd Street in Brooklyn to Yaakov Michailov, who in turn sold it to Borjana Mihajlovic-Cekic for $235,000. (Id. ¶¶ 4, 5, Exs. C, D). Plaintiffs believe that the transfer from David Michailow to Yaakov Michailov was a fraudulent transfer designed to prevent plaintiffs from collecting on the judgment entered in the California action. (Id. ¶ 6).

On July 31, 2008, plaintiffs commenced this action, alleging trademark infringement, false designation of origin, unfair competition and right of publicity violations against the defendants. On August 1, 2008, the district court issued an order of seizure directing the seizure and impoundment of unauthorized merchandise in the defendants' possession, pursuant to which plaintiffs seized 41 silk screens bearing the names, trademarks, and/or likenesses of the musical performers that are the subject of this action. (Feinswog 1/30 Decl.[9] ¶ 3; Prelim. Inj. Op. at 2). During the course of the search, plaintiffs' counsel observed silk screening equipment that could print up to six shirts at a time. (Feinswog 1/30 Decl. ¶ 3). According to plaintiffs' counsel, defendants' records were in disarray; there were a minimal amount of sales records; and yet the

---

[9]Citations to "Feinswog 1/30 Decl." refer to the Declaration of Kenneth A. Feinswog, Esq., submitted January 30, 2009 in support of plaintiffs' motion for default judgment.

defendants had invested "a significant amount of money in silk screens and silk screen equipment." (Id.)

On October 8, 2008, Peter Michailow filed a document that was labeled on the docket sheet as an "Answer" and could be construed as a submission on behalf of Ninna. See discussion infra at 9-11. Other than this submission, and despite proper service, the defendants failed to file answers or otherwise respond to the Complaint.

On October 15, 2008, defendants Jacob Michailov and Peter Michailow appeared for a conference before this Court. At that time, they were advised that they would be required to retain counsel for the corporate defendants and that if they wanted to contest plaintiffs' claims, they would be required to file answers by November 17, 2008. (See Conf. Tr. 6:6-8, 7:16-19, 9:7-11, 11:9-24, Oct. 15, 2008). On October 28, 2008, Peter Michailow filed a Motion to Appoint Counsel. The motion was denied by this Court in an Order dated November 4, 2008 because Mr. Michailow failed to provide the information necessary to demonstrate an inability to obtain counsel. Defendants took no further action.

On December 4 and 5, 2008, defaults were entered against the defaulting defendants, and on January 30, 2009, plaintiffs moved for default judgment against them and against Peter Michailow. The motion was referred to the undersigned on February 2, 2009 for an inquest as to jurisdiction, damages, and other relief. This Court issued an Inquest Order on the same day, requiring that papers regarding damages be submitted by March 4, 2009 and scheduling an inquest hearing for March 18, 2009. The Court received no submissions from defendants, but defendants Peter Michailow and David Michailow appeared at the March 18 hearing.

Despite the conference and hearing at which the defendants orally raised challenges to

plaintiffs' claims of ownership to the various marks involved, and despite the Court's repeated advice to retain counsel, file answers, and/or move to vacate the default, the defaulting defendants took no action. Moreover, the defaulting defendants failed to respond to plaintiffs' motion for default judgment; thus, the motion for default judgment remains unchallenged.

In seeking damages for trademark infringement, plaintiffs seek an award of statutory damages in the amount of $100,000 for each of the three registered trademarks that they assert appeared among the infringing items recovered during the course of the seizure, for a total of $300,000, pursuant to 15 U.S.C. §§ 1114 and 1125(a). In addition, plaintiffs further assert that because the defendants have defaulted, they have admitted the allegations in the Complaint that the defendants are fraudulent assignees or alter egos of I Schwartz and they are therefore jointly liable for the judgment previously entered in the California action in the amount of $255,186.57.[10]

## DISCUSSION

A. Default

1) Standards

Rule 55(a) of the Federal Rules of Civil Procedure provides: "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default." Fed. R. Civ. P. 55(a). As a threshold issue, Rule 55 sets forth a two-

---

[10]Plaintiffs do not request reasonable costs, which are available under the statute, 15 U.S.C. § 1117(a), or attorney's fees, which are available in "exceptional cases." Id.

step process that first requires the entry of a default through a notation on the record that the party has defaulted, and then entry of a default judgment, which is the final action in the case. See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993). The court clerk automatically enters the default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, by notation of the party's default on the clerk's record of the case. See id.

After a default has been entered against a party, if that party fails to move to set aside the default pursuant to Rule 55(c), a default judgment may be entered. See Fed. R. Civ. P. 55(b). Although an application for entry of default should be made before a motion for entry of default judgment, courts will generally excuse a failure to obtain entry of default before the motion for default judgment is made. See, e.g., Meehan v. Snow, 652 F.2d 274, 276 (2d Cir. 1981); Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *1-2 (S.D.N.Y. Oct. 19, 1992) (citations omitted).

In determining whether a default judgment should enter, courts have cautioned that a default judgment is an extreme remedy that should only be granted as a last resort. See Meehan v. Snow, 652 F.2d at 277. While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that the district court must balance that interest with its responsibility to "[afford] litigants a reasonable chance to be heard." Enron Oil Corp. v. Diakuhara, 10 F.3d at 95-96. Thus, in light of the "oft-stated preference for resolving disputes on the merits," defaults are "generally disfavored" and "doubt should be resolved in favor of the defaulting party." Id. Accordingly, just because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right. See Erwin DeMarino Trucking Co. v. Jackson, 838 F.

Supp. 160, 162 (S.D.N.Y. 1993).

The court possesses significant discretion and may consider a number of factors in deciding whether or not to grant a default judgment, including "whether the grounds for default are clearly established" and "the amount of money potentially involved" – the more money involved, the less justification for entering the default judgment. See Hirsch v. Innovation Int'l Inc., 1992 WL 316143, at *2 (citations omitted). Additionally, a court may consider whether material issues of fact remain, whether the facts alleged in the complaint state a valid cause of action, whether plaintiff has been substantially prejudiced by the delay involved, and how harsh an effect a default judgment might have on the defendant. See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981); 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, §§ 2685, 2688 (3d ed. 1998).

2) Peter Michailow's Submission

On October 8, 2008, defendant Peter Michailow filed a document that was docketed as an "Answer" but does not meet the requirements of a proper responsive pleading. The document reads as follows:

> Ninna inc,
>
> To whom it may concern,
>
> Hi can you please look over all the documents which they say they have the rights on, if you look at the Years and dates its not matching and it dosent made sence that they have right from 20 to 30 years licensing. licensing must be renewed evry year. they must provide proof of art work and registerd date year and copyrights. another question is, if there lawyer from California has the rights to come to our place and do a search and mess up all my office papers and boxes and all other items. if he has the rights to do that why don't he come to court in New York, but he is on the phone in

9

> court, this does not make any sence. And please I want them to
> bring all the boxes screens and stuff that they took from us to court,
> And I wanna see proof of all the right which they say they have of
> all this bands.

Following this paragraph is a list of bands and attached are several trademark records retrieved

from the U.S. Patent and Trademark Office website for marks at issue in this lawsuit. The

document is not signed, but the docket sheet indicates that it was filed by Peter Michailow.

"In responding to a pleading, a party must: (A) state in short and plain terms its defenses

to each claim asserted against it; and (B) admit or deny the allegations asserted against it by an

opposing party." Fed. R. Civ. P. 8(b)(1). Since "'the purpose of pleading is to facilitate a proper

decision on the merits,'" Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002) (quoting

Conley v. Gibson, 355 U.S. 41, 48 (1957)), "[a]n answer must only be sufficiently clear to afford

plaintiff 'fair notice' of what defenses are claimed." Update Art, Inc. v. Charnin, 110 F.R.D. 26,

43 (S.D.N.Y. 1986). "Where a party is proceeding *pro se*, the Court must 'read his supporting

papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." V&R

Fine Art, Inc. v. One Oil on Canvas Painting, No. 08 CV 5031, 2009 WL 637156, at *4

(S.D.N.Y. Feb. 13, 2009) (quoting Soto v. Walker, 44 F.3d 169, 173 (2d Cir. 1995)) (omission in

original).

Here, plaintiffs argue that the document submitted does not constitute an answer because

"it was a response to plaintiffs' motion for preliminary injunction and/or written on behalf of

Ninna." (Pls.' Mem.[11] at 3). The Court is not aware of — and plaintiffs do not provide — any

reason to construe the document as a response to the motion for a preliminary injunction rather

---

[11]Citations to "Pls.' Mem." refer to the Memorandum of Law in Support of Motion for Default Judgment submitted by plaintiffs on January 30, 2009.

than an answer to the Complaint. In fact, the document was filed after the district court's Order granting a preliminary injunction had already issued. As for whether it was filed on behalf of Ninna, Peter Michailow, or both, plaintiffs offer no argument supporting their assertion that it was filed on behalf of Ninna, other than the reference to "Ninna inc" at the top of the document, which could be a reference to the case caption, Bravado v. Ninna, Inc. Moreover, because the document contains references to "I" and "my office papers" and because filings by a *pro se* party must be liberally construed, the Court will construe the filing as entered on behalf of both Ninna and Peter Michailow.

Further, while the document does not admit or deny every allegation in the Complaint, it clearly communicates Mr. Michailow's intent to deny plaintiffs' claim that they have rights to the trademarks at issue, which is a necessary element of plaintiffs' claims. Given that defaults are "generally disfavored" and "doubt should be resolved in favor of the defaulting party," Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95-96 (2d Cir. 1993), the Court concludes that entry of default as to Peter Michailow would be inappropriate under the circumstances. See Update Art, Inc. v. Charnin, 110 F.R.D. at 43 (declining to enter default judgment even where defendant's purported answer failed "to fairly apprise [his co-defendant] of what allegations in the cross-claim [he] resists").

With regard to Ninna, however, it is well-established that a corporation may not appear in the Second Circuit unless represented by counsel. See Shapiro, Bernstein & Co. v. Cont'l Record Co., 386 F.2d 426, 427 (2d Cir. 1967) (per curiam) (noting the well-settled law that a corporation cannot appear without an attorney). Thus, since the submission described above was not made by an attorney representing Ninna, it may not be construed as Ninna's answer to the

Complaint.

Accordingly, the Court concludes that default was properly entered against defendant Ninna and respectfully recommends that plaintiffs' request to enter default against defendant Peter Michailow be denied. The Court further respectfully recommends that plaintiffs' motion for default judgment as to Peter Michailow also be denied.

3) Notice

Rule 55 provides that "[i]f the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 3 days before the hearing." Fed. R. Civ. P. 55(b)(2). On January 30, 2009, plaintiffs filed a Proof of Service document along with their Notice of Motion for Default Judgment declaring that on that date, plaintiffs had served defendants with copies of their motion papers by mail. Since this was more than three days in advance of the return date of March 4, 2009, included in the Notice of Motion, and more than three days before the hearing ultimately held by this Court on March 18, 2009, the notice requirement has been met.

4) Application of Default Standards

Having reviewed the prior proceedings in this case, this Court respectfully recommends that default judgment be entered. When a default is entered, the defendant is deemed to have admitted all of the well-pleaded factual allegations in the complaint pertaining to liability, see Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993), and a party moving for default judgment is entitled to "all reasonable inferences in its favor." Finkel v. Romanowicz, No. 07-2558-cv, slip op. at 8, 2009 WL 2432723, at *3 (2d Cir. Aug. 11, 2009) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d at

12

65). For the purposes of an inquest, a court accepts as true all factual allegations in the complaint, except those claims relating to damages. See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d at 65; see also Finkel v. Romanowicz, slip op. at 6 n.6, 2009 WL 2432723, at *2 n.6.

A review of plaintiffs' Complaint demonstrates that plaintiffs have alleged, inter alia, that the defendants violated Sections 32(l) and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114(1), as amended, and 15 U.S.C. § 1125(a), through the unauthorized manufacture, distribution and sale of shirts and other items bearing the likenesses, logo, and trademarks of various musical performers. Based on a review of the allegations set forth in the Complaint, it appears that plaintiffs have established the elements of liability necessary to state a claim under either of these statutes. It further appears that the Court has subject matter jurisdiction over plaintiffs' trademark claims under 28 U.S.C. §§ 1331 and supplemental jurisdiction over plaintiffs' related state law claims under 28 U.S.C. § 1367.

Section 1114(1)(a) provides: "Any person who shall, without the consent of the registrant . . . use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion . . . shall be liable in a civil action by the registrant." 15 U.S.C. § 1114(1). Section 1125(a)(1) states in relevant part: "Any person who . . . uses in commerce any word, term, name, symbol, or device . . . or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion . . . shall be liable in a civil action." 15 U.S.C. § 1125(a)(1). Here, the defendants' alleged conduct, which includes the unauthorized manufacture, distribution, shipment, and sale of shirts and other items bearing the

marks, designs, logos, likenesses, and registered trademarks of musical performers of which plaintiffs are the owners and authorized distributors violates both of these statutes.[12]

In this case, it is clear that the defaulting defendants are in default. They have submitted nothing to the Court whatsoever other than Peter Michailow's single submission which, as discussed above, cannot be considered an answer on behalf of Ninna or any defendant other than Peter Michailow. Defendants have not moved to vacate the default, nor have they responded to plaintiffs' motion for default judgment or to this Court's Order requiring the submission of papers in connection with the damages request. Moreover, the corporate defendants have failed to comply with the Court's order to secure counsel. In the Second Circuit, a corporation may not appear or be permitted to conduct litigation unless represented by counsel. See Shapiro, Bernstein & Co. v. Cont'l Record Co., 386 F.2d 426, 427 (2d Cir. 1967) (per curiam) (noting the well-settled law that a corporation cannot appear without an attorney); see also Jones v. Niagara Frontier Transp. Auth., 722 F.2d 20, 22 (2d Cir. 1983) (discussing the rationale for requiring corporations, as "artificial" entities, to appear through counsel only); Brown v. John H. Beyer, Inc., No. 97 CV 142, 1998 U.S. Dist. LEXIS 19556, at *5-6, 8-9 (S.D.N.Y. Dec. 11, 1998). Therefore, a defendant corporation's failure to comply with a court order to secure counsel constitutes a failure to defend and will subject the party to a default judgment against it. See Brown v. John H. Beyer, Inc., 1998 U.S. Dist. LEXIS 19556, at *7-8 (collecting cases). Thus, there is nothing before this Court that disputes the veracity of plaintiffs' claims.

It is therefore respectfully recommended that plaintiffs' motion for default judgment

---

[12]Plaintiffs' state law allegations of fraudulent conveyance and alter ego liability are addressed infra, at 20-30.

against the defaulting defendants be granted.

B. Calculation of Default Judgment Damages

Unlike allegations pertaining to liability, allegations in connection with damages are not deemed admitted in the context of a default judgment. The burden is on the plaintiff to establish its entitlement to recovery. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158. The plaintiff must still prove damages in an evidentiary proceeding at which the defendant has the opportunity to contest the claimed damages. Id. Indeed, "'while a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation.'" Levesque v. Kelly Commc'ns, Inc., No. 91 CV 7045, 1993 WL 22113, at *4 (S.D.N.Y. Jan. 25, 1993) (quoting Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974)).

While "the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing." Fustok v. Conticommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988), aff'd, 873 F.2d 38 (2d Cir. 1989); see also Transportes Aereos de Angola v. Jet Traders Inv. Corp., 624 F. Supp. 264, 266 (D. Del. 1985). Here, where the plaintiffs have filed reasonably detailed affidavits and exhibits pertaining to the damages incurred and the Court has held an inquest hearing on the issue of damages, this Court can make an informed recommendation regarding damages.

1) Damages Under the Lanham Act

Section 35 of the Lanham Act, 15 U.S.C. § 1117, governs the types of monetary relief available in cases of trademark infringement and unfair competition. Polo Fashions, Inc. v.

15

Rabanne, 661 F. Supp. 89, 95 (S.D. Fla. 1986); see also Sara Lee Corp. v. Bags of New York, Inc., 36 F. Supp. 2d 161, 164-65 (S.D.N.Y. 1999). The statute authorizes the plaintiff "to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action" where plaintiff can establish a violation of his rights as a registered trademark holder. 15 U.S.C. § 1117(a). The Lanham Act further provides that "[i]n assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." Id. Thus, plaintiffs in a Lanham Act action are not limited to recovery of their actual damages, but where the defendants "acted with willful deception," George Basch Co., Inc. v. Blue Coral, Inc., 968 F.2d 1532, 1540 (2d Cir. 1992), plaintiffs "may recover profits reaped by the defendants from their infringing activity." Louis Vuitton S.A. v. Spencer Handbags Corp., 765 F.2d 966, 973 (2d Cir. 1985) (citing Monsanto Chemical Co. v. Perfect Fit Products Manufacturing Co., 349 F.2d 389, 396-97 (2d Cir. 1965), cert. denied, 383 U.S. 942 (1966)). It is clear that under section 1117(a), the court has "some degree of discretion in shaping relief," id. at 1537, and courts have considered a defendant's "willful and deliberate behavior" in fashioning an award that will act as an appropriate deterrent. Polo Fashions, Inc. v. Rabanne, 661 F. Supp. at 96; W.E. Bassett Co. v. Revlon, Inc., 435 F.2d 656, 662 (2d Cir. 1970) (finding "bad faith and wrongful intent" and awarding profits where defendant's actions "are surrounded by an aura of indifference to plaintiff's rights and a smug willingness to determine unilaterally that the good will plaintiff had sought to foster could safely be treated as a nullity").

Where a defendant has used a counterfeit of a plaintiff's mark, the plaintiff may elect to receive, in lieu of profits, statutory damages of:

      (1) not less than $1,000 or more than $200,000 per counterfeit

mark per type of goods or service sold, offered for sale, or
distributed, as the court considers just; or (2) if the court finds that
the use of the counterfeit mark was willful, not more than
$2,000,000 per counterfeit mark . . . .

15 U.S.C. § 1117(c); see Sara Lee Corp. v. Bags of New York, Inc., 36 F. Supp. 2d at 164-65. A

counterfeit mark is defined as "a spurious mark which is identical with, or substantially

indistinguishable from, a registered mark." 15 U.S.C. § 1127. A party may be held liable for

trading on a counterfeit mark whether or not that party knew the mark was registered. 15 U.S.C.

§ 1116(d)(1)(B)(i).

"Section 1117(c) was enacted to address the difficulty of calculating actual damages

caused by counterfeiters." Ermenegildo Zenga Corp. v. 56th St. Menswear, Inc., No. 06 CV

7827, 2008 WL 4449533, at *4 (S.D.N.Y. Oct. 2, 2008). An award of statutory damages may be

designed not only to compensate the plaintiff, but also to deter the defendant and others from

future infringing activities. See Gucci America, Inc. v. MyReplicaHandbag.com, No. 07 CV

2438, 2008 WL 512789, at *3 (S.D.N.Y. Feb. 26, 2008). In addition, one factor that courts look

to in determining the size of an award is whether the defendant "has cooperated in providing

particular records from which to assess the value of the infringing material produced." Gucci

America, Inc. v. MyReplicaHandbag.com, 2008 WL 512789, at *3 (internal quotation marks

omitted). Damage awards entered by district courts in New York under section 1117(c) have

ranged from $55,000 to $1,000,000 per counterfeit mark. See id. at *5 & nn.1-3 (citing cases).

Willfulness means "'knowledge that [a defendant's] conduct represented infringement or

perhaps recklessly disregarded the possibility.'" Nike, Inc. v. Top Brand Co., No. 00 CV 8179,

2005 WL 1654859, at *6 (S.D.N.Y. July 13, 2005) (quoting Kepner-Treqoe, Inc. v. Vroom, 186

F.3d 283, 288 (2d Cir. 1999)). "When a defendant has defaulted, then by virtue of its default it is deemed to be a willful infringer." Gucci America, Inc. v. MyReplicaHandbag.com, 2008 WL 512789, at *3; accord Tiffany (NJ) Inc. v. Luban, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003).

Here, plaintiffs seek statutory damages in connection with the sale of items bearing the registered trademarks GUNS N' ROSES, DEPECHE MODE, and IRON MAIDEN for which plaintiffs claim they are the exclusive licensees of the trademark holders. (Pls.' Mem. at 6; Compl. ¶¶ 50, 56, 62; Feinswog 1/30 Decl. ¶ 5, Ex. C). In support of their claims, plaintiffs submitted on July 31, 2008 the Declaration of Teresa Murphy ("Murphy Decl."), who avers that she made a purchase of three shirts from defendant Cmegamall.com on July 2, 2008. Plaintiffs claim that these shirts infringe on their trademarks and that defendants were not authorized to use these marks in connection with the sale of shirts. (Murphy Decl. ¶ 3; D'Auria Decl.[13] ¶¶ 8-9). One of the shirts purchased — the one bearing the mark IRON MAIDEN (Murphy Decl. ¶ 3, Ex. B) — clearly supports plaintiffs' claim for statutory damages under section 1117(c) because plaintiffs' registered mark actually appears printed on the shirt. The other two shirts, however, bear photographs of Axl Rose, the lead singer for Guns N' Roses, and Jimmy Page, the lead guitarist for Led Zeppelin (Murphy Decl. ¶ 3, Exs. A, C; D'Auria Decl. ¶ 8). While plaintiffs assert rights to the likenesses of these two musicians (see D'Auria Decl. ¶¶ 8-9), they do not request damages based on their use, and they do not assert that the likenesses are registered trademarks, as required to qualify for statutory damages under section 1117(c). Since the registered trademarks GUNS N' ROSES and DEPECHE MODE do not actually appear on the

_____

[13]Citations to "D'Auria Decl." refer to the Declaration of Peter D'Auria, submitted by plaintiffs on July 31, 2008.

shirts, there is no basis for imposing liability for infringement of those two registered marks.

In addition to Ms. Murphy's declaration, plaintiffs have also provided the Court with copies of advertisements that appeared on the website of defendant Cmegamall.com offering for sale items in connection with marks to which the plaintiffs have rights, including IRON MAIDEN. (Feinswog 1/30 Decl. Ex. N). Plaintiffs' assertion that the defendants were not authorized to sell these items has not been refuted. (See Compl. ¶¶ 50, 56, 62; D'Auria Decl. ¶¶ 8-10).

In seeking statutory damages for these items, plaintiffs explain that because there was a minimal amount of documents present when plaintiffs conducted the seizure at defendants' premises, it is difficult, if not impossible for plaintiffs to prove defendants' sales or profits. Further, since they have defaulted, defendants have not provided plaintiffs with any records to assist in determining actual damages, nor have they provided any records to the Court. Taking plaintiffs' allegations as true, defendants marketed shirts and other products utilizing trade names and marks which were confusingly similar to the marks and trade names held by plaintiffs, including shirts bearing a mark substantially indistinguishable from the registered mark IRON MAIDEN. In addition, defendants falsely represented on at least one website that the products listed for sale were licensed (Feinswog 1/30 Decl. ¶ 7), when, according to plaintiffs, Bravado Inc. was the only licensed seller of this merchandise in the United States. These representations were not only false, but clearly establish the necessary element of customer confusion required to establish a right of relief under the Lanham Act. Moreover, the use of the marks and likenesses, and the suggestion that the product was made by and endorsed by plaintiffs is clear evidence of an intent to trade upon the reputation and good will of plaintiffs and the musical performers.

Thus, plaintiffs have demonstrated that defendants acted in a willful and deliberate manner in using plaintiffs' registered IRON MAIDEN mark. See Gucci America, Inc. v. MyReplicaHandbag.com, 2008 WL 512789, at *3 (noting that a defaulting defendant is deemed to be a willful infringer). In view of their wilfulness, the Court could impose damages of up to $2,000,000 for each counterfeit mark at issue under section 1117(c)(2). However, here plaintiffs have only sought damages of $300,000, representing $100,000 per mark. Although plaintiffs have only presented evidence to establish use of one counterfeit mark, given that defendants' online sales operations infringed more than just this one mark, the Court finds plaintiffs' total request of $300,000 to be more than reasonable under the circumstances. Accordingly, the Court respectfully recommends that for use of the counterfeit IRON MAIDEN mark, plaintiffs be awarded statutory damages in the amount of $300,000.

2) Liability for the California Judgment

On August 10, 2005, the court in the California action entered a judgment against I Schwartz, Peter Michailow, and David Michailow in the amount of $255,186.57. The instant Complaint alleges that in August 2005, I Schwartz fraudulently transferred all of its assets to defendants Heyclick, Ninna, Hollywood, Jacob Michailov, Peter Michailow, Cmegamall.com, Mosh-pitt.com, and Rocktshirtspunk.com. (Compl. ¶¶ 67-71). The Complaint further alleges that there exists a unity of interest between and among the various defendants rendering each of the individual defendants alter egos of each of the corporate defendants. (Id. ¶¶ 78-81). Plaintiffs contend that because defendants are deemed to have admitted that they are either alter egos or fraudulent transferees of I Schwartz, they should be held jointly and severally liable for all debts of I Schwartz, including the full amount of the California judgment. (Id. ¶¶ 71, 81; Pls.'

Mem. at 4). As explained below, these claims cannot be sustained.

### i) Fraudulent Conveyance

Under New York's debtor and creditor statute, where a debtor has engaged in a fraudulent conveyance, a creditor may (a) "[h]ave the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim," or (b) "[d]isregard the conveyance and attach or levy execution upon the property conveyed." N.Y. Debt. & Cred. Law § 278. Additionally, "where the assets fraudulently transferred no longer exist or are no longer in possession of the transferee, a money judgment may be entered in an amount up to the value of the fraudulently transferred assets." Neshewat v. Salem, 365 F. Supp. 2d 508, 521-22 (S.D.N.Y. 2005). Thus, the relief available to a creditor who can establish a fraudulent conveyance claim is limited by the value of the transferred assets.

Here, since plaintiffs' Complaint makes no reference to the nature or value of the assets allegedly transferred by I Schwartz, there is no way for the Court to calculate appropriate damages. Plaintiffs cite no authority, either in their Complaint or in their Memorandum of Law, to support their fraudulent conveyance claim or their requested remedy of holding defendants liable for the full amount of the California judgment against I Schwartz. Plaintiffs' requested form of relief does not appear to be available under New York law.[14]

---

[14]Plaintiffs have also failed to state which jurisdiction's law should apply to their fraudulent conveyance claim. In general, disputes over property are decided under the law of the jurisdiction which has "the most significant relationship" to the property and the parties. Restatement (Second) of Conflict of Laws § 222. Since the Complaint does not specify the location of the assets alleged to have been fraudulently conveyed by I Schwartz, there is no way for the Court to make a choice of law determination with any certainty. Because plaintiffs have chosen to bring their action in New York, the Court has assumed that the law of New York applies.

In addition to the allegations in their Complaint describing a fraudulent conveyance by I

Schwartz, plaintiffs have also claimed in their declarations that David Michailow, who was a

defendant in the California action but who was never served in this action, fraudulently conveyed

a condominium he owned to defendant Jacob Michailov. (Feinswog 7/31 Decl. ¶¶ 4-6, Exs. C,

D, E). However, because this assertion has only been raised in plaintiff's papers filed in support

of their request for a temporary restraining order and was not pleaded as a claim in the

Complaint, it cannot provide a basis for awarding damages.[15]

   ii) Alter Ego Liability

 In Morris v. N.Y. State Dep't of Taxation & Finance, 82 N.Y.2d 135, 623 N.E.2d 1157,

603 N.Y.S.2d 807 (1993), the New York Court of Appeals set forth the law in New York[16]

regarding alter ego liability, which is also referred to as "piercing the corporate veil."

Specifically, the Court stated that:

> [t]he concept of piercing the corporate veil is a limitation on the
> accepted principles that a corporation exists independent of its
> owners, as a separate legal entity, that the owners are normally not
> liable for the debts of the corporation, and that it is perfectly legal
> to incorporate for the express purpose of limiting the liability of the
> corporate owners.

Id. at 140, 623 N.E.2d at 1160, 603 N.Y.S.2d at 810. The Second Circuit has elaborated on the

contours of alter ego liability as follows:

> [W]hen a corporation is used by an individual to accomplish his

---

[15]Even if the Court were to award damages on the basis of these allegations, the relief
would be limited by the value of the condominium, for the reasons discussed above.

[16]As with the fraudulent conveyance claim, plaintiffs do not specify which jurisdiction's
law applies, and the lack of information provided precludes a proper choice of law determination.
Again, the Court looks to New York law for guidance since the suit was brought here.

> own and not the corporation's business, such a controlling
> shareholder may be held liable for the corporation's commercial
> dealings as well as for its negligent acts. Where there is proof that
> defendants were doing business in their individual capacities to suit
> their own ends — shuttling their own funds in and out without
> regard to the corporation's form — this sort of activity exceeds the
> limits of the privilege of doing business in a corporate form and
> warrants the imposition of liability on individual stockholders.
> The critical question is whether the corporation is a "shell" being
> used by the individual shareowners to advance their own "purely
> personal rather than corporate ends."

Wm. Passalacqua Builders v. Resnick Developers S., 933 F.2d 131, 138 (2d Cir. 1991) (citing

Port Chester Elec. Constr. Corp. v. Atlas, 40 N.Y.2d 652, 656-57, 389 N.Y.S.2d 327, 357 N.E.2d

983 (1976), and Walkovszky v. Carlton, 18 N.Y.2d 414, 417, 420, 276 N.Y.S.2d 585, 223

N.E.2d 6 (1966)).

The question of "[w]hether the corporate veil should be pierced requires a fact specific

inquiry; there are no bright-line rules." DER Travel Servs. v. Dream Tours & Adventures, Inc.,

No. 99 CV 2231, 2005 WL 2848939, at *8 (S.D.N.Y Oct. 28, 2005); see also MAG Portfolio

Consult, GMBH v. Merlin Biomed Group LLC, 268 F.3d 58, 64 (2d Cir. 2001); Wm.

Passalacqua Builders, Inc. v. Resnick Developers S., Inc., 933 F.2d 131 at 139 (holding that "the

infinite variety of situations that might warrant disregarding the corporate form is not an easy

task because disregarding corporate separateness is a remedy that 'differs with the circumstances

of each case'") (quoting American Protein Corp. v. AB Volvo, 844 F.2d 56, 60 (2d Cir.), cert.

denied, 488 U.S. 852 (1988)).

While there are no strict requirements that must be satisfied before a court may exercise

the power to pierce the corporate veil, the Morris court found that "piercing the corporate veil

requires a showing that: (1) the owners exercised complete domination of the corporation in

respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury." Morris v. N.Y. State Dep't of Taxation & Finance, 82 N.Y.2d at 141, 623 N.E.2d at 1160-61, 603 N.Y.S.2d at 810 (citing cases); see also American Fuel Corp. v. Utah Energy Dev. Co. Inc., 122 F.3d 130, 134 (2d Cir. 1997) (citing Morris for applicable New York law on piercing the corporate veil).

Prior to the Court of Appeals decision in Morris, the Second Circuit had held that New York law permitted a plaintiff to pierce the corporate veil when only one of these two factors had been satisfied. See Wm. Passalacqua Builders v. Resnick Developers S., 933 F.2d at 138. Morris, however, holds that under New York law, "[w]hile complete domination of the corporation is the key to piercing the corporate veil, especially when the owners use the corporation as a mere device to further their personal rather than the corporate business, such domination, standing alone, is not enough; . . . [t]he party seeking to pierce the corporate veil must establish that the owners, through their domination, abused the privilege of doing business in the corporate form to perpetrate a wrong or injustice against that party such that a court in equity will intervene." Morris v. N.Y. State Dep't of Taxation & Finance, 82 N.Y.2d at 141-42, 623 N.E.2d at 1161, 603 N.Y.S.2d at 811 (citations omitted); see also Thrift Drug, Inc. v. Universal Prescription Adm'rs, 131 F.3d 95, 97 (2d Cir. 1997) (quoting Carte Blanche (Singapore) Pte., Ltd. v. Diners Club Int'l, Inc., 2 F.3d 24, 26 (2d Cir. 1993)); American Fuel Corp. v. Utah Energy Dev. Co., Inc., 122 F.3d at 134 (applying Morris); Mars Elecs. of N.Y., Inc. v. U.S.A. Direct, Inc., 28 F. Supp. 2d 91, 97 (E.D.N.Y. 1998).

The New York Court of Appeals has reiterated that the requirements of Morris are not easy to meet: "Those seeking to pierce a corporate veil of course bear a heavy burden of showing

that the corporation was dominated as to the transaction attacked and that such domination was the instrument of fraud or otherwise resulted in wrongful or inequitable consequences." TNS Holdings, Inc. v. MKI Sec. Corp., 92 N.Y.2d 335, 339, 703 N.E.2d 749, 751, 680 N.Y.S.2d 891, 893 (1998). Indeed, "courts should permit veil-piercing only under 'extraordinary circumstances.'" EED Holdings v. Palmer Johnson Acquisition Corp., 228 F.R.D. 508, 512 (S.D.N.Y. 2005) (quoting Murray v. Miner, 74 F.3d 402, 404 (2d Cir. 1996)).

The Court in Morris also noted that alter ego liability "assumes that the corporation itself is liable for the obligation sought to be imposed." Morris v. N.Y. State Dep't of Taxation & Finance, 82 N.Y.2d at 141, 623 N.E.2d at 1160, 603 N.Y.S.2d at 810. An attempt to invoke alter ego liability, therefore, "does not constitute a cause of action independent of that against the corporation; rather it is an assertion of facts and circumstances which will persuade the court to impose the corporate obligation on its owners." Id.

The court in Passalacqua enumerated a variety of "factors that would tend to show that defendant was a dominated corporation," under the control of either an individual or another corporation, Wm. Passalacqua Builders v. Resnick Developers South, 933 F.2d at 139, and these factors remain useful in determining whether the first requirement of Morris has been established. See American Fuel Corp. v. Utah Energy Dev. Co., Inc., 122 F.3d at 134. The factors listed in Passalacqua are:

> (1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence, *i.e.*, issuance of stock, election of directors, keeping of corporate records and the like, (2) inadequate capitalization, (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes, (4) overlap in ownership, officers, directors, and personnel, (5) common office space, address and telephone numbers of corporate

entities, (6) the amount of business discretion displayed by the
allegedly dominated corporation, (7) whether the related
corporations deal with the dominated corporation at arms length,
(8) whether the corporations are treated as independent profit
centers, (9) the payment or guarantee of debts of the dominated
corporation by other corporations in the group, and (10) whether
the corporation in question had property that was used by other of
the corporations as if it were its own.

Wm. Passalacqua Builders v. Resnick Developers S., 933 F.2d at 139.

Here, plaintiffs allege that there is "a unity of interest and ownership" among the

defendants,

such that any individuality of separateness between the individual
defendants and each of the aforesaid corporations ceased to exist
and they are each the alter-egos of the others, in that said
corporations were or are mere shells and shams without capital,
assets, stock or shareholders and were conceived, intended and
used by defendants to avoid individual liability and for the purpose
of substituting a financially insolvent corporation in the place of
the individual defendants.

(Compl. ¶ 79). Plaintiffs further allege that "defendants distributed to themselves" funds held by

the corporate defendants for the purpose of avoiding attachment of the funds by plaintiffs,

"thereby rendering said corporations insolvent." (Id. ¶ 80). "Because the aforesaid defendants

are the alter-egos of the other aforesaid defendants," plaintiffs conclude, "they are all liable for

all claims against said corporations, including the California Judgment against I Schwartz." (Id.

¶ 81).

Upon a close reading of paragraph 79, it appears that plaintiffs are alleging that each of

the individual defendants is an alter ego of each of the corporate defendants. (Id. ¶ 79) (alleging

that "any individuality of separateness between the individual defendants and each of the

aforesaid corporations ceased to exist"). However, as discussed above, Peter Michailow is

26

already subject to the California judgment as a co-defendant with I Schwartz, and David Michailow (who is also a co-defendant in the California judgment) was never served in this action. The only remaining individual defendant is Jacob Michailov. Thus, despite the inclusion of phrases such as "the aforesaid defendants are the alter-egos of the other aforesaid defendants," which are, to put it charitably, somewhat vague, it is fairly clear that what plaintiffs attempt to allege is that Jacob Michailov should be held liable for the California judgment as an alter ego of I Schwartz. Therefore, what the Court must determine is whether, based on the well-pleaded factual allegations in their Complaint, plaintiffs have stated a claim that Jacob Michailov is an alter ego of I Schwartz and thus liable for its obligations. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158; Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61 at 65. The Court finds that plaintiffs have fallen short of this hurdle.

In general, a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). This pleading standard "does not require 'detailed factual allegations,'" but a pleading will not suffice if it offers merely "'labels and conclusions,'" "'a formulaic recitation of the elements of a cause of action,'" or "'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 557 (2007)). A claim of fraud must meet a higher standard; it must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "[A] party seeking application of the [alter ego] doctrine must come forward with factual allegations as to both elements" set out in Morris. EED Holdings v. Palmer Johnson Acquisition Corp., 228 F.R.D. at 512. "Allegations concerning the domination element are subject to the basic pleading standard of Rule 8.

Allegations concerning the fraud or wrongful act element are subject to the heightened pleading standard of Rule 9(b) to the extent that they allege fraud." Federal Nat'l Mortgage Assoc. v. Olympia Mortgage Corp., No. 04 CV 4971, 2006 WL 2802092, at *7 (E.D.N.Y. Sept. 28, 2006) (citation omitted).

First, although the Court is able to discern from the Complaint that plaintiffs seek to enforce against Jacob Michailov the California judgment previously entered against I Schwartz, the allegations are too vague to support this claim. Plaintiffs have failed to specify, for example, which individual defendant took funds from which corporation. (See Compl. ¶¶ 80). Further confusion is caused by the odd wording of paragraph 79, which initially seems to allege that each of the seven defendant corporations "were or are . . . without . . . assets," but then concludes by alleging that the corporations were created "for the purpose of substituting a financially insolvent corporation in the place of the individual defendants." Use of the singular "a . . . corporation" suggests that the allegation applies to only one of the corporate defendants, but it is impossible to discern which one. Perhaps plaintiffs intended to suggest that each of the corporate defendants was insolvent and created for that purpose, but the language used does not communicate this. Furthermore, this allegation seems inconsistent with the allegation in paragraph 80, since if the individual defendants were improperly taking funds from at least one of the corporate defendants, then at least one of the corporate defendants must have at some point not been "without . . . assets." The Court notes this not to suggest that the claim that defendants abused the corporate form is implausible, but to illustrate the unacceptably vague nature of the allegations.

Most of the rest of the statements in this claim are not factual allegations which must be deemed admitted, but legal conclusions which the Court need not accept. See Au Bon Pain

Corp. v. Artect, Inc., 653 F.2d at 65. Moreover, even if it is assumed that plaintiffs' bare allegations set forth a wrongful injury other than fraud to satisfy the second Morris element, it is unclear which defendant or defendants are alleged to have caused such harm. Plaintiffs' claim is therefore too vague and conclusory to allege alter ego liability. See, e.g., EED Holdings v. Palmer Johnson Acquisition Corp., 228 F.R.D. at 512 (dismissing claim to pierce corporate veil where allegations were "conclusory"); Ferreira v. Unirubio Music Publ'g, No. 02 CV 805, 2002 WL 1303112, at *2-3 (S.D.N.Y. June 13, 2002) (dismissing veil-piercing claim where factual allegations were insufficient); Triemer v. Bobsan Corp., 70 F. Supp. 2d 375, 377 (S.D.N.Y. 1999) (dismissing veil-piercing claim and noting that "disregard of the corporate form is highly disfavored under New York law").

In their declarations, plaintiffs provide a few additional details of some connections among defendants I Schwartz, Ninna, and Jacob Michailov. (Feinswog 7/31 Decl. ¶¶ 7-9; Falsone Decl. ¶ 3). However, where a defendant defaults, plaintiff is limited to its *well-pleaded* factual allegations.[17] See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158. In Finkel v. Romanowicz, the Second Circuit noted that while a court is required to accept plaintiffs' factual allegations as true, the court "is also required to determine whether the [plaintiff's] allegations establish [the defendant's] liability as a matter of law." Finkel v. Romanowicz, slip op. at 8, 2009 WL 2432723, at *3. In making this determination, the court has the discretion to "'require proof of necessary facts and need not agree that the alleged facts

---

[17]Moreover, plaintiff's memorandum does not cite the details contained in these declarations, instead arguing only that default judgment should enter based on the tenth cause of action in the Complaint. (See Pls.' Mem. at 2-4). Thus, it is not clear that plaintiffs intended their declarations to support this motion.

constitute a valid cause of action.'" Id. (quoting Au Bon Pain Corp. v. Artect, Inc., 653 F.2d at 65).

Here, even taking the additional details provided by plaintiffs into account, they do not add sufficient clarity to allege alter ego liability. Specifically, plaintiffs present: (1) a bank statement which shows an address for I Schwartz which is the same address now being used by Ninna; (2) a catalog which lists phone and fax numbers for I Schwartz which are now being used by Ninna; and (3) a website associated with Ninna which lists a phone number registered to Yakov (a/k/a Jacob) Michailov. (Feinswog 7/31 Decl. ¶¶ 7-9; Falsone Decl. ¶ 3). The first two documents tend to support an allegation that Ninna was an alter ego of I Schwartz, but plaintiffs have not articulated such an allegation. As discussed above, the Complaint does not suggest that any of the corporate defendants are alter egos of I Schwarz. These additional details are, therefore, irrelevant. The third document tends to support an allegation that Jacob Michailov was an alter ego of Ninna. However, even if such an allegation can be gleaned from the Complaint, the California judgment was entered against I Schwartz, not Ninna, so this document is also irrelevant.

In conclusion, even drawing all reasonable inferences in their favor, plaintiffs have failed to set forth well-pleaded allegations supporting alter ego liability.

### iii) Damages for Alter Ego Liability

Even if plaintiffs had stated a claim for alter ego liability, they have failed to meet their burden of demonstrating that they are entitled to damages under this claim. Allegations with regard to damages are not deemed admitted, see Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158; rather, "the quantum of damages remains to be established by proof."

Levesque v. Kelly Commc'ns, Inc., 1993 WL 22113, at *4 (internal quotation marks omitted). Although plaintiffs have provided the Court with a copy of the judgment entered against I Schwartz and Peter and David Michailow in California (see Feinswog 1/30 Decl. ¶ 4, Ex. B), they do not provide any information as to whether any of that judgment, which was entered nearly four years ago, has been paid. In fact, at the inquest hearing, David Michailow appeared and although he has not been served in this case and was not speaking under oath, he made the following statement to the Court in reference to plaintiffs: "They put a lien on my account. . . . I am on SSI almost five years. . . . You holding my SSI money, my food money. . . . You should release my money immediately." (Inquest Hr'g Tr. 21:19-20, 22:10-12, Mar. 18, 2009). In response, plaintiffs' counsel explained that "we are just enforcing the judgment that was entered in California" and registered in the Southern District of New York, and that "we served the restraining notices pursuant to the CPLR." (Id. 22:21-23:6). So it therefore appears that at least some fraction of the California judgment has been collected. Without an accounting of the amount which remains outstanding, the Court cannot recommend damages. In the event the district court finds that plaintiffs have established alter ego liability, this Court respectfully recommends that plaintiffs be given an opportunity to submit additional documentation of the amount still owing on the California judgment. See Jacobson v. Empire Elec. Contractors, No. 08-2869-cv, slip op. at 4-5, 2009 WL 2271620, at *2-3 (2d Cir. July 30, 2009) (summary order).

Accordingly, it is respectfully recommended that for the foregoing reasons, no damages be awarded at this time based on the California judgment.

C. Permanent Injunction

Plaintiffs also request entry of a permanent injunction, prohibiting defendants from manufacturing, selling, or distributing items that embody the marks or likenesses of any of the musical performers that are the subject of this action.

A permanent injunction is an appropriate remedy under Section 34 of Lanham Act, which states that the Court may grant an injunction, "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title." 29 U.S.C. § 1116(a). In a case such as this, where defendants are in default and where the applicable statute provides for injunctive relief as a possible remedy, the court may issue an injunction provided that plaintiffs meet the requirements for obtaining a permanent injunction, which include a showing of "'irreparable harm should the injunction not be granted.'" King v. Nelco Indus., Inc., No. 96 CV 4177, 1996 WL 629564, at *1 (E.D.N.Y. Oct. 23, 1996) (quoting Haitian Centers Council, Inc. v. McNary, 969 F.2d 1326, 1338 (2d Cir. 1992), vacated as moot, 509 U.S. 918 (1993)); see also LaBarbera v. David Liepper & Sons, Inc., No. 06 CV 1371, 2006 WL 2423420, at *6 (E.D.N.Y. Jul. 06, 2006). Plaintiffs must also demonstrate the absence of an adequate remedy at law. See LaBarbera v. David Liepper & Sons, Inc., 2006 WL 2423420, at *6.

Here, the defaulting defendants have not only defaulted in this action but they have willfully infringed plaintiffs' trademarks. Under these circumstances, the Court finds that plaintiffs have provided sufficient evidence "that defendant intends to frustrate any judgment . . . or show 'contempt for the judicial process'" to satisfy the requirements for entry of an injunction.

32

King v. Nelco Indus., Inc., 1996 WL 629564, at *1 (internal citations omitted). Thus, this Court respectfully recommends that plaintiffs' request for a permanent injunction prohibiting the defaulting defendants from selling, manufacturing, and/or distributing any items bearing the names, trademarks, logos, or likenesses of Morrissey, Metallica, Slayer, Korn, Guns N' Roses, Led Zeppelin, The Clash, Iron Maiden, Motorhead, or Depeche Mode be granted.


D. Defendants Not Served

Defendants I Schwartz and David Michailow have not been served in this action. Under Rule 4(m) of the Federal Rules of Civil Procedure, plaintiffs had 120 days from the filing of their Complaint on July 31, 2008 to effect service on all defendants. Since that period has long passed, it is respectfully recommended that the claims against I Schwartz and David Michailow be dismissed without prejudice.


CONCLUSION

For the reasons stated herein, it is respectfully recommended that: 1) default judgment enter against defendants Ninna, Heylick, Hollywood, Cmegamall.com, Rocktshirtspunk.com, Mosh-pitt.com, and Jacob Michailov in the amount of $300,000 for use of a counterfeit mark in violation of the Lanham Act; 2) a permanent injunction enter against these seven defendants prohibiting them from selling, manufacturing, and/or distributing any items bearing the names, trademarks, logos, or likenesses of Morrissey, Metallica, Slayer, Korn, Guns N' Roses, Led Zeppelin, The Clash, Iron Maiden, Motorhead, or Depeche Mode; 3) plaintiffs' request for enforcement of the California judgment against these defendants as fraudulent transferees of I

33

Schwartz be denied; 4) plaintiffs' request for enforcement of the California judgment against defendant Jacob Michailov as an alter ego of I Schwartz be denied; 5) plaintiffs' request to enter default and issue a default judgment against defendant Peter Michailow be denied; and 6) the claims against the remaining two defendants, I Schwartz and David Michailow, be dismissed without prejudice for failure to effect proper service.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within ten (10) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's Order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
August 18, 2009

Cheryl L. Pollak
United States Magistrate Judge